Dunkin, Ch.
delivered the opinion of the Court.
In some respects this Court has taken a different view of this transaction, from that presented in the decree of the Circuit Court, and has arrived at a different conclusion.
It is stated in the decree, that at the sales of the Commissioner, in January, 1822, nearly the whole of the residuary estate was bid off by those interested under the residuary clause of - the testator’s will, and the avowed purpose of the amended proceedings, in 1827, purporting to make Williams and wife et al. parties, was to make a final settlement. The decree of Chancellor Thompson, reciting rather than construing the will of the testator, declared that the property bequeathed to the daughters, under the residuary clause, was not to be subject to the debts or contracts of their husbands, but was to be held to their sole and separate use. On the day of pronouncing the decree, the report made under it ,-was
*111 heard and confirmed, and the decretal order was made, by which the bonds of the purchasers, Martin, Williams, Jeter, and Mantz, were directed to be “credited with their proportions of the sales in the hands of the Commissioner.” Neither Martin, nor Williams, nor Mantz were entitled to any proportion, or share, of the sales in the hands of the Commissioner. But the meaning of the order was not to be misunderstood. They, that is, Martin and Williams, had purchased, as persons entitled to shares, because their wives were interested in the property, and consequently would be interested in the fund. In making up his account, which had been confirmed by the Court, the Commissioner had charged the shares to which Mrs. Williams was entitled, with the purchases which had been thus made, and the interest thereon. Williams certainly was a party to these proceedings. The Court, in the same decree, had declared that the share of Mrs. Williams could not be subjected to the payment of her husband’s debts ; and the only rational construction of the decree and decretal order is, that the purchases were made for Mrs. Williams, or by Williams, as representing the interests of his wife and children, and therefore their shares of the sales were properly ordered to be discounted against the amount due on the purchases. Any other construction renders the order as palpable a violation of the will of the testator, as it is inconsistent with the decree itself. It cannot be doubted, that the land was paid for with the funds of the complainant, and the testimony is abundant to warrant the conclusion that it was so intended to be paid for, at the time of the purchase. No mortgage was required; no security was given; no payments made. It is true that a conveyance was executed to Williams, but it was never put on record, and was found by the complainant among his papers, after his death. The conduct and declarations of Williams confirm the conclusion. Under her father’s will, Mrs. Williams was entitled to a specific legacy of certain negroes, for life, to her sole and separate use, with a limitation to her children. When the Cyper creek tract of land was under advertisement by the sheriff, as the property of Williams, in 1842, he, (Williams,) had a conversation on the subject with the witness, Glover, in which Williams said to him, “ that his wife’s money had paid for this land, and, if she was entitled to the rest of the entailed property, she ought to be entitled to this.” The general' principle is admitted, that where land is purchased by A, who takes a conveyance in his own name, but the purchase money is paid by B, there is a resulting trust in favor of him who pays the consideration. *112 It was formerly doubted whether such trust could be established by parol, after the death of the nominal purchaser; but such doubts have been removed by more recent decisions. Lench vs. Lench, 10 Ves. 511, was a case of that character. Sir William Grant says, “All must depend upon the proof of the fact;” and “ it is now settled, that a claim of this sort may be supported by parol evidence.” He did not think the evidence sufficient, in Lench vs. Lench, and dismissed the bill. But in that case he cites, from the Register’s book, the case of Wilson vs. Foreman, very imperfectly reported 2 Dick. 593. Money was settled for the purpose of being laid out in land. The husband obtained possession of the money, under a power of attorney from the trustee. Soon afterwards he purchased an estate in Kent, and took a conveyance to a trustee. He also purchased an estate in Yorkshire, and took that conveyance to himself and his heirs. The claim of the wife was upon that estate in Yorkshire. Lord Thurlow directed a reference, to inquire whether the estate was purchased with part of the trust money, with an intention to settle the same pursuant to the marriage articles. Upon the evidence, the Master so reported, and the Lord Chancellor directed new trustees to be appointed, and Falling Foss, (the Yorkshire estate,) to be conveyed to such new trustees, upon the trusts in the settlement. In the case under consideration, the Court is satisfied, from the evidence, that the purchase was made and paid for with the trust funds, and that it was the intention of the party that the estate should be held subject to the trusts declared in the will.
It is urged, however, that Williams was in possession of the land for many years, and that the trust ought not to be enforced after so great a lapse of time. As between Williams and his wife it is difficult to perceive in what manner his possession, or the lapse of time, could impair her rights. If the husband were now alive, and the only defendant, the Court would refer his possession to his fiduciary character, and that the enjoyment by the wife was such as was contemplated by the will.
But on the 7th November, 1842, the premises were sold by the Sheriff, under an execution against Williams, and, with other property, were purchased by Dr. Mendenhall, who, .on the following day, conveyed to the defendant, Hollingsworth, and at the same time gave him a bond with security to indemnify him against any claim of the complainant in the premises, except her claim of dower. Williams died in 1845, and this bill was preferred on the 17th April, 1846. For the *113 reasons stated in the decree of the Circuit Court, it is quite clear that Hollingsworth is not entitled to the protection of a purchaser without notice. But it has been insisted in this Court that, as it appears from the recital in the bill that the defendant purchased from Dr. Mendenhall, it ought to have been proved that Dr. Mendenhall had notice. It may be proper to remark that this defence is not taken by the answer, and the facts in that respect were not particularly developed. But there is no difficulty on this point. Mr. Sugden considers the rule as perfectly well settted, that in order to rebut the plaintiff’s equity, in order to entitle the defendant, to the protection of a purchaser for valuable consideration, he must prove the actual payment of the money before notice of the plaintiff’s title. On the part of the defendant himself, this defence is entirely unsupported. — on the contrary, is fully disproved by the evidence. But a purchaser with notice of an equitable claim, may protect himself if he has bought from a bona fide purchaser without notice, although this circumstance may influence the Court with respect to costs. His answer does not, however, assume the ground that his vendor occupied that position, and therefore the complainant may very well have deemed it unnecessary to establish notice to Dr. Mendenhall. But there was no proof whatever that Dr. Mendenhall had paid any part of the purchase money. On the contrary it is alleged here that he was the plaintiff in the execution under which the land was sold, and that he bought to save his debt. But it has been repeatedly held that a purchaser at Sheriff’s sales, who is also the plaintiff in the execution to whom the money is payable, and who, therefore, parts with no money, is not entitled to the protection of a bona fide purchaser for valuable consideration. See Kirby vs. Dillard, Spears Eq. 20; Shultz vs. Carter, Id. 542.
It is ordered and decreed, that possession of the Cyper creek tract of land be surrendered to the complainant, and that the defendant account for the rents and profits of the same since the death of W. W. Williams, in 1845. In other respects the decree of the Circuit Court is affirmed.
Harper, Ch. concurred.